# STATE OF NORTH CAROLINA

____ORANGE____ County

FILED
2007 OCT -1 P 4: 35
ORANGE COUNTY C.S.C.
BY _____

File No. _____

In The General Court of Justice
☐ District  ☒ Superior Court Division

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS

G.S. 1A-1, Rules 3, 4

| | |
|---|---|
| Name of Plaintiff<br>Jason W. Crawford and Natalie J. Crawford<br>Address<br>City, State, Zip | |
| **VERSUS** | Date Original Summons Issued |
| Name of Defendant(s)<br>Ameriquest Mortgage Company and Citi Residential Lending, Inc. | Date(s) Subsequent Summon(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address of Defendant 1 | Name And Address of Defendant 2 |
|---|---|
| Ameriquest Mortgage Company<br>% National Registered Agents, Inc.<br>Registered Agent<br>120 Penmarc Drive<br>Raleigh, NC 27603 | |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff)<br>Carlos E. Mahoney<br>Glenn, Mills & Fisher, P.A.<br>P.O. Drawer 3865<br>Durham, NC 27702-3865 | Date Issued<br>10-1-07<br>Signature | Time<br>4:35  ☐ AM  ☒ PM |
|---|---|---|
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk of Superior Court | |

| ☐ ENDORSEMENT<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date of Endorsement<br>Signature | Time<br>☐ AM  ☐ PM |
|---|---|---|
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk of Superior Court | |

**NOTE TO PARTIES:** Many Counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts

(Over)

EXHIBIT A

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address of Person With Whom Copies Left (if Corporation, Give Title of Person Copies Left With)

☐ Other manner of service

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address of Person With Whom Copies Left (If Corporation, Give Title of Person Copies Left With)

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Deputy Sheriff Making Return |
|---|---|
| Date Received | Name of Sheriff (Type or Print) |
| Date of Return | County of Sheriff |

AOC-CV-100, Side Two, Rev. 10/01
© 2001 Administrative Office of the Courts

07 CV 001435

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                               SUPERIOR COURT DIVISION
ORANGE COUNTY                  FILE NO. _____

FILED 2007 OCT -1 P 4: 35
ORANGE COUNTY, C.S.C.
BY _____

| | |
|---|---|
| JASON W. CRAWFORD and NATALIE J. CRAWFORD, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) **COMPLAINT** (Jury Trial Demanded) |
| AMERIQUEST MORTGAGE COMPANY and CITI RESIDENTIAL LENDING INC., | ) ) ) ) |
| Defendants. | ) |

NOW COME Plaintiffs, complaining of Defendants, and allege and say as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Jason W. Crawford is a citizen and resident of Orange County, North Carolina.

2. Plaintiff Jason W. Crawford was born on March 29, 1976 and he is presently 31 years old.

3. Plaintiff Natalie J. Crawford is a citizen and resident of Orange County, North Carolina.

4. Plaintiff Natalie J. Crawford was born on December 24, 1977 and she is presently 29 years old.

5. Plaintiffs are married to one another and have two young children.

6. Plaintiffs are the owners of real property located at 1127 Crawford Dairy Road, Chapel Hill, North Carolina 27516 and described with greater particularity in a Deed that was recorded in Book 2045 at Page 159 of the Orange County Registry (hereinafter referred to as the

"Property").

7. Plaintiffs' Property consists of a one-story manufactured home and approximately two acres of land.

8. Plaintiffs purchased the Property in 2000 for $110,000.00.

9. Defendant Ameriquest Mortgage Company (hereinafter referred to as "Defendant Ameriquest") is a Delaware corporation that is duly licensed to conduct business in the State of North Carolina.

10. Defendant Ameriquest maintains a registered office in Wake County, North Carolina.

11. At all times relevant to this Complaint, Defendant Ameriquest was duly licensed by the North Carolina Commissioner of Banks as a mortgage lender and engaged in the business of residential mortgage lending.

12. In its dealings with Plaintiffs, as alleged herein, Defendant Ameriquest acted as a mortgage broker and mortgage lender as those terms are defined under G.S. §55-243.01 of the North Carolina Mortgage Lending Act.

13. Defendant Ameriquest is the legal holder of an Adjustable Rate Note that was executed by Plaintiffs on November 6, 2004 (hereinafter referred to as the "Note").

14. The Note is secured by a Deed of Trust on Plaintiffs' Property.

15. Defendant Citi Residential Lending, Inc. (hereinafter referred to as "Defendant Citi") is a Delaware corporation that is duly licensed to conduct business in the State of North Carolina.

16. Defendant Citi maintains a registered office in Wake County, North Carolina.

17. As of October 1, 2007, Defendant Citi services the Note on behalf of Defendant Ameriquest.

18. Plaintiffs assert this civil action to reform the Note on the grounds of fraud by Defendant Ameriquest.

19. Plaintiffs also assert this action to recover monetary damages from Defendant Ameriquest under the North Carolina Unfair and Deceptive Trade Practices Act.

20. Defendant Citi is solely named in this action as a necessary party and Plaintiffs have not asserted a claim for relief against it.

## FACTUAL ALLEGATIONS

21. The allegations set forth in the preceding paragraphs are incorporated herein by reference.

22. In October, 2004, Plaintiffs had a fixed rate mortgage on their Property with an outstanding balance of $95,854.64.

23. During the week of October 11th, Plaintiffs attended the North Carolina State Fair and picked up an Ameriquest pamphlet which advertised Ameriquest's mortgage opportunities.

24. On or about October 16, 2004, Plaintiffs examined Ameriquest's website and submitted an online application to refinance their residential mortgage while consolidating approximately $31,000.00 of consumer debt.

25. In their application, Plaintiffs requested a 30-year fixed rate mortgage in the amount of $126,889.96.

26. On or about October 18, 2004, a male Ameriquest employee contacted Plaintiff Natalie J. Crawford (referred to herein as "Plaintiff Natalie Crawford") to discuss their online

application.

27. During their conversation, Plaintiff Natalie Crawford told the Ameriquest employee that Plaintiffs were interested in a 30-year fixed rate mortgage.

28. In response, the employee said that Ameriquest would appraise the Property in order to determine the type of mortgage that Ameriquest could offer Plaintiffs.

29. A few hours later, the Ameriquest employee called Plaintiff Natalie Crawford and told her that Plaintiffs' Property had appraised for $203,000.00.

30. Upon information and belief, and unbeknownst to Plaintiffs, the appraisal was not conducted in accordance with the Uniform Standards of Professional Appraisal Practice and had no basis in fact.

31. The appraisal was completed by Defendant Ameriquest in order to induce Plaintiffs into borrowing more money than they otherwise intended.

32. Because of the appraisal, Plaintiffs ultimately decided to borrow approximately $40,000.00 more from Defendant Ameriquest in order to consolidate all of their remaining consumer debt.

33. After he communicated the Property's appraised value, the Ameriquest employee began pressuring Plaintiff Natalie Crawford to borrow greater sums of money under a 2-year adjustable rate mortgage ("ARM") with an initial 6.1% per annum interest rate.

34. Plaintiff Natalie Crawford told the Ameriquest employee that she and her husband were not interested in a 2-year ARM and that they wanted a 30-year fixed rate mortgage.

35.     The Ameriquest employee responded by telling Plaintiff Natalie Crawford that she and her husband qualified for an Ameriquest program which allowed them to convert, within two years, the 2-year ARM to a 30-year fixed rate mortgage at a rate better than 6.1% (hereinafter referred to as the "Ameriquest Program" or "Program").

36.     The Ameriquest employee told Plaintiff Natalie Crawford that in order to complete the conversion, she simply needed to call Ameriquest a couple months before the initial 2-year term was set to expire on the ARM.

37.     In addition, the Ameriquest employee assured Plaintiff Natalie Crawford that the Ameriquest Program was in her family's best interests and that he was encouraging all of his clients who qualified for the Program to take advantage of it.

38.     Unbeknownst to Plaintiffs, the representations of Defendant Ameriquest's employee concerning the Ameriquest Program were false, misleading, and intended to induce Plaintiffs into accepting a two-year ARM with Defendant Ameriquest.

39.     Upon information and belief, Defendant Ameriquest encouraged its employees and agents to pressure customers into borrowing money under short term ARMs by any and all means necessary, including by making false promises and representations concerning the material terms of a mortgage loan.

40.     The misrepresentations, as alleged above, were made by Defendant Ameriquest's employee within the course and scope of his employment with Ameriquest.

41.     The Ameriquest Program never existed and Defendant Ameriquest's employee knew that his representations to Plaintiffs were false and untrue.

42. After conferring with the employee, Plaintiff Natalie Crawford discussed the details of the Ameriquest Program with her husband.

43. Plaintiffs decided to accept a 2-year ARM from Defendant Ameriquest instead of a 30-year fixed rate mortgage because of the material misrepresentations by Ameriquest's employee about the Program.

44. After Plaintiffs agreed to the 2-year ARM, a closing occurred on November 6, 2004 at Plaintiffs' home.

45. Teresa K. Aull attended the closing as Defendant Ameriquest's agent.

46. Upon information and belief, Defendant Ameriquest's closing agent was not an attorney and not acting under the supervision of an attorney licensed to practice law in the State of North Carolina.

47. Neither Defendant Ameriquest nor its closing agent advised Plaintiffs of their rights to have an attorney present at the closing and to have an attorney review the terms of the mortgage loan before closing.

48. At the closing, Defendant Ameriquest's agent presented Plaintiffs with more than 20 legal documents, including the Note, briefly summarized the contents of each document, and showed Plaintiffs where to sign.

49. Defendant Ameriquest's agent did not read the closing documents to Plaintiffs and was unable to answer the majority of their questions about details in the documents.

50. During the closing, Plaintiffs questioned Defendant Ameriquest's agent about the Note's variable rate.

51. Defendant Ameriquest's agent told Plaintiffs not to worry about the variable rate because they had qualified for the Ameriquest Program.

52. Unbeknownst to Plaintiffs, the representations of Defendant Ameriquest's agent concerning the Ameriquest Program were false, misleading, and intended to induce Plaintiffs into signing the Note.

53. Defendant Ameriquest's agent either knew that the Ameriquest Program did not exist and knew that her representations concerning the Program were false or had a reckless disregard for the truth or falsity of her representations.

54. The misrepresentations, as alleged above, were made by Defendant Ameriquest's agent within the course and scope of her agency with Ameriquest.

55. Plaintiffs then signed the Note in reliance upon the misrepresentations of Defendant Ameriquest's employee and agent concerning the Ameriquest Program.

56. The Note was in the total amount of $170,075.00 consisting of $163,151.190 in direct financing and $8,298.92 in settlement charges.

57. Defendant Ameriquest received $6,102.34 in fees as a result of its loan to Plaintiffs.

58. During the 2-year term of the Note, Plaintiffs' interest rate was 6.1% per annum and their monthly mortgage payment was $1,154.20.

59. In September, 2006, Plaintiff Natalie Crawford called Defendant Ameriquest's branch office in Greensboro, North Carolina in order to convert their 2-year ARM to a 30-year fixed rate mortgage under the Ameriquest Program.

60. At that time, Plaintiffs discovered that Defendant Ameriquest had closed all of its offices in North Carolina.

61. Plaintiff Natalie Crawford then called Defendant Ameriquest's main office in California and spoke to an Ameriquest employee about the Program.

62. The Ameriquest employee said that the Program did not exist and that Defendant Ameriquest would not convert the Note to a 30-year fixed interest rate.

63. In January, 2007, Plaintiffs' interest rate increased to 8.1% per annum and their monthly mortgage payment rose to $1,386.00.

64. In July, 2007, Plaintiffs' interest rate again increased to 9.1% and their monthly mortgage payment rose to $1,501.01.

65. Plaintiffs have made all of their payments under the Note and are not in default.

66. Plaintiffs presently owe $164,710.10 to Defendant Ameriquest under the Note.

67. Plaintiffs' Property recently appraised at $132,000.00.

68. During the past year, Plaintiffs have attempted on numerous occasions to refinance the Note with other lenders.

69. Plaintiffs have been unable to refinance the Note in light of their indebtedness to Defendant Ameriquest as well as the nature and value of their Property.

## FIRST CLAIM FOR RELIEF:
## FRAUD

70. The allegations set forth in the preceding paragraphs are incorporated herein by reference.

71. On or about October 18, 2004 and November 6, 2004, Defendant Ameriquest's employee and closing agent made false representations to Plaintiffs concerning the Ameriquest Program.

72. Defendant Ameriquest's employee knew that his representations concerning the Ameriquest Program were false and untrue.

73. Defendant Ameriquest's agent either knew that her representations concerning the Ameriquest Program were false or she acted with a reckless disregard to its truth or falsity.

74. Defendant Ameriquest's employee and agent intended to mislead the Plaintiffs through their false representations concerning the Ameriquest Program and to induce Plaintiffs into accepting a 2-year ARM and signing the Note.

75. Plaintiffs reasonably relied upon Defendant Ameriquest's material misrepresentations to their detriment, signed the Note, and are now bound to an ARM with a present annual interest rate of 9.1% and a maximum rate of 12.1%.

76. Plaintiffs signed the Note based upon Defendant Ameriquest's representations that once the initial 2-year term expired, their mortgage would be converted to a 30-year mortgage with a fixed interest rate that was better than 6.1% per annum.

77. Plaintiffs have been damaged by their reliance upon Defendant Ameriquest's misrepresentations.

78.　Plaintiffs are entitled to have the Note reformed so that it corresponds to their agreement with Defendant Ameriquest.

79.　Plaintiffs request that the Court issue an order which reforms the Note to reflect a 30-year term beginning on January 1, 2007 with a fixed interest rate that does not exceed 6.1% per annum.

## SECOND CLAIM FOR RELIEF:
## UNFAIR AND DECEPTIVE TRADE PRACTICES

80.　The allegations set forth in the preceding paragraphs are incorporated herein by reference.

81.　At all times relevant to the Complaint, Defendant Ameriquest operated a residential mortgage lending business.

82.　In its dealings with Plaintiffs, Defendant Ameriquest's conduct violated G.S. §75-1.1 in one or more of the following ways:

  a.　By inducing Plaintiffs to borrow more money than they otherwise intended through the use of an appraisal that was not conducted in accordance with the Uniform Standards of Professional Appraisal Practice and had no basis in fact;

  b.　By inducing Plaintiffs to sign the Note through material misrepresentations and false promises concerning the Ameriquest Program;

  c.　By failing to notify Plaintiffs of their rights to have an attorney present at closing and to have an attorney review the loan documents before closing;

  d.　By failing to notify Plaintiffs that its closing agent was not an attorney and, upon information and belief, not supervised by an attorney who was licensed to practice law in the State of North Carolina;

  e.　By failing to act in good faith or to fairly deal with Plaintiffs in the course of the mortgage loan transaction;

    f. By engaging in conduct in the course of a mortgage loan transaction prohibited under G.S. §53-243.11; and,

    g. In such other and further ways as may be shown by the evidence.

83. In its dealings with Plaintiffs, Defendant Ameriquest's conduct was in commerce or affected commerce.

84. As a direct and proximate result of Defendant Ameriquest's unfair and deceptive trade practices, Plaintiffs suffered damages including, but not limited to, additional closing fees and interest on their mortgage loan in excess of 6.1% per annum.

85. Plaintiffs are entitled to recover compensatory damages from Defendant Ameriquest in an amount which exceeds $10,000.00, to be trebled as allowed under G.S. §75-16.

86. Since September, 2006, Plaintiffs have attempted on several occasions to refinance their mortgage with Defendant Ameriquest in order to resolve this matter.

87. Plaintiffs were compelled to institute this civil action after they were notified that the Ameriquest Program did not exist and that Defendant Ameriquest would not convert the Note to a 30-year fixed rate mortgage as previously promised.

88. Defendant Ameriquest has refused, in an unjust and unwarranted manner, to resolve this matter, and therefore, Plaintiffs are entitled to recover a reasonable attorney's fee under G.S. §75-16.1

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray the Court for a Judgment awarding the following relief:

1.  Reformation of the Note so that it reflects a 30-year mortgage term, beginning on January 1, 2007, with a fixed interest rate that does not exceed 6.1% per annum;

2.  Compensatory damages from Defendant Ameriquest in an amount which exceeds $10,000.00 and which are trebled under G.S. §75-16;

3.  Interest as allowed by law;

4.  The costs of this civil action, including a reasonable attorney's fee under G.S. §75-16.1, from Defendant Ameriquest;

5.  A trial by jury on all issues of fact; and,

6.  Such other and further relief as the Court may deem just and proper.

This the 1st day of October, 2007.

/s/ Carlos E. Mahoney
Carlos E. Mahoney
Glenn, Mills & Fisher, P.A.
P.O. Drawer 3865
Durham, NC 27702-3865
Telephone: (919) 683-2135
Facsimile: (919) 688-9339
N.C. State Bar No. 26509
Attorney for Plaintiffs

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| ORANGE COUNTY | 07 CVS 1435 |

| | | |
|---|---|---|
| JASON W. CRAWFORD and NATALIE J. CRAWFORD, | ) ) ) | |
| Plaintiffs, | ) ) | NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE AS TO |
| vs. | ) ) | DEFENDANT CITI RESIDENTIAL LENDING, INC. ONLY |
| AMERIQUEST MORTGAGE COMPANY and CITI RESIDENTIAL LENDING INC., | ) ) ) ) | |
| Defendants. | ) | |

NOW COME Plaintiffs Jason W. Crawford and Natalie J. Crawford, pursuant to the provisions of Rule 41 of the North Carolina Rules of Civil Procedure, and hereby voluntarily dismiss without prejudice all claims which were asserted in this civil action against Defendant Citi Residential Lending, Inc. only.

This the 19th day of October, 2007.

_____
Carlos E. Mahoney
N.C. State Bar No. 26509
Glenn, Mills & Fisher, P.A.
P.O. Drawer 3865
Durham, NC 27702
Telephone: 919-683-2135
Facsimile: 919-688-9339
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I, Carlos E. Mahoney, do hereby certify that a copy of the foregoing document entitled, **Notice of Voluntary Dismissal Without Prejudice as to Defendant Citi Residential Lending, Inc. Only**, was duly served upon the following by depositing a copy of the document in a postage paid, properly addressed envelope in an official depository under the exclusive care and custody of the United States Postal Service, on this the 19th day of October, 2007.

*Via U.S. Mail and Facsimile: 213-630-5764*
Karen L. Stevenson
BuchalterNemer
1000 Wilshire Blvd., Suite 1500
Los Angeles, CA 90017-2457

*Via Facsimile Only: 644-3026*
Stacie Jo Cruz
Trial Court Coordinator
Old Orange County Courthouse
104 E. King Street
Hillsborough, NC 27278

_____
Carlos E. Mahoney

2